UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED

**CATALINA DAVIS,**
**Plaintiff**

**v.**                                    Civil Action No. 05-30112-MAP

**Carabetta,**
**Defendant**

### Plaintiff's Opposition to Defendant's Motion for
### Summary Judgment

**Standard of Review:**

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F. 3d 33, 41 (1st Cir. 2005) (quoting Fed. R. Civ. P. 56(c). "An issue is 'genuine' for the purposes of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a 'material fact' is one which might affect the outcome of the suit under governing law." *Carceri v. Norton,* 398 F. 3d 22, 29 (1st Cir. 2005) (Citations and further quotation marks omitted). Where there remain genuine issues of material fact which, when viewed in the light most favorable to the non-moving party, would allow a reasonable jury to return a verdict in her favor, as in this matter, summary judgment should not be granted.

**Background and Procedural History:**

In June of 2001, the Plaintiff was working for Carabetta (a/k/a Baystate Property

Management Company), had been hired as a member of the cleaning department and between June 2001 and August of 2002, her performance and work record were satisfactory.  She was paid a check for $200.00 every week, from which no deductions were made.  Her work hours were 8:00-12:00, Monday through Friday.  She received no 1040 or 1099 forms from the company documenting her payment during the time she was employed.  The Plaintiff was not informed that she was hired as an independent contractor and she was required to work the days and hours established by the company, who owned a number of properties and included multiple family members as part of its management team.

In August of 2001, she received an improper advance from a family member, highly placed in the management structure of Carabetta, known to her as "Jacco" (Leroy Giaco Brocolli)  "Jacco" invited her to a "strip club," an invitation which she declined, and then offered to pay her or any of her friends who were willing, for a "lap dance," an offer which she also declined.   While the Plaintiff was sincerely offended by these advances, she did not report them to anyone in the company, hoping that her refusals would end the unwanted advances.

On May 9, 2002, "Jacco Jr.," (Jacco's son, Dino Brocolli), was present at her work site and asked her for direction to another building.  Jacco Jr., on the walk to the other building, began staring at the Plaintiff's breasts and eventually offered the observation, "you have some nice titties."  The Plaintiff, highly offended, upset and humiliated, reported the incident to her work site supervisor, Wayne Mitchell on the same day.  Mr. Mitchell later alleged to her that he had "talked to" Jacco Jr., and the Plaintiff was given

no further information on the matter. The Defendant, at the time of the incident, had a "sexual harassment policy" in place, however the policy was non-compliant as to changes in the law and there is no evidence that the Plaintiff had ever been provided with a copy of the policy.

On June 21, 2002, the Plaintiff was laid off after being informed that Source 1, Inc., was taking over, and was told she would be hired by Source 1. Other members of the cleaning crew were not laid off at the time the Plaintiff was laid off. The Plaintiff was employed by Source 1 from July 1, 2002 through August 24, 2002 at another Carabetta property and was then terminated. Although five other employees were rehired by Carabetta, the Plaintiff was not.

The Plaintiff contacted the Mass. Commission Against Discrimination (MCAD) on 7/16/06, who filed a formal complaint of sexual harassment and sexual discrimination, on the Plaintiff's behalf, against Carabetta, on 8/27/02, which was also filed with the Equal Employment Opportunity Commission (EEOC). Although other employees who had been terminated were hired back, the Plaintiff learned, during a settlement conference at the MCAD, that she was not hired back because she had filed a complaint with the MCAD. On March 31, 2003, the MCAD's Investigating Commissioner, notified the Plaintiff and the Defendant that she had found "probable cause" to credit the plaintiff's allegations of sexual harassment against the Defendant.

During proceedings before the MCAD, the MCAD sought to consolidate two other sexual harassment complaints against the respondent (Baystate Property Management Co..) with that of Ms. Davis, however, the respondent objected (the respondent, was represented by a series of different counsel, during the lengthy (2 1/2 year)

3

investigatigation conducted by the MCAD.

The Plaintiff informed the MCAD on 10/14/04 that it was her intent to file her complaint with the Superior Court of the Commonwealth of Massachusetts and the matter was dismissed by the MCAD, with prejudice, on 10/28/04 and was issued a Notice of Suit Rights from the EEOC on 4/27/05.

The Plaintiff filed her complaint with United States District Court, District of Massachusetts on 5/11/05, naming Carabetta (a/k/a Baystate Property Management Company) as the Defendant in this action.  Barbara F. Greenlee, Esq., filed her appearance on behalf of the Plaintiff on 4/14/06.  Plaintiff's counsel failed to conduct Discovery and failed to attend a deposition of her client, held by Defendant's counsel on 6/27/06, in Revere, MA, at which the Plaintiff was forced to proceed without benefit of counsel. Plaintiff's counsel filed leave to disappear from representation on 11/02/06, having failed to respond to the motion for summary judgment filed by the Defendant on 9/16/06.

On 10/26/06 this Court dismissed the claims for failure to prosecute and allowed the case to be reopened on 10/31/06, ordering the Plaintiff to file either an appearance of new counsel or an appearance on her own behalf by 12/1/06. The Plaintiff timely filed a *pro se* appearance. The Plaintiff was also ordered to file her response to the Defendant's motion for summary judgment by 12/29/06 and to pay the Defendant $550.00, as ordered by this court, on or before the same date.

**Facts:**

1. The Plaintiff states that she was employed by the Defendant, in Springfield, between June 2001 and August 2002. **(Exhibit 1)**

4

2. The Defendant's list of employees from January 1999 through August 31, 2001,(**Exhibit 2**) submitted to the MCAD, does not include the Plaintiff, nor does it include Ms. Jackson, who also filed an MCAD complaint against the Defendant, for sexual harassment, but does include Ms. Valezquez, who also filed a complaint against the defendant. **Exhibit 3** : Response of Defendant's Counsel to MCAD investigator all three Carabetta female employee MCAD Claims against the Defendant.

3. As of August 31, 2001, Defendant's list of employees for the Springfield area included only two persons employed as a cleaner. **Exhibit 2-Defendant's list of employees**.

4. Defendant claims the Plaintiff was one of twelve employees who lost their job with the company on June 21, 2002, because of outsourcing (**Exhibit 3**)

5. Plaintiff suffered an instance of sexual harassment by a member of Defendant's management team, (Leroy "Jacco" Brocolli), in August, 2001, (Mr. Brocolli invited her to a "strip club" and offered to pay her or any of her friends for a "lap dance") which she did not report to her supervisor (**Exhibit 1**)

6. On May 9, 2002, Plaintiff was subjected to sexually explicit and harassing comments ("you have some nice titties") by Dino ("Jacco, Jr.") Brocolli, son of Leroy Brocolli. (**Exhibit 1**)

7. Plaintiff complained to her supervisor on the same day, who told her that he would speak to "Jacco Jr." (**Exhibit 1**)

8. Defendant's Sexual Harassment Policy in force at the time was defective and there is no evidence that the Plaintiff had been provided a copy of the defective policy in place during her employment with the Defendant. (**Exhibit 4**).

9. Defendant fostered a sexually hostile work environment at its Springfield, MA work sites and at other sites in the company. (**Exhibit 5-**MCAD Investigation Fact Sheet).

10. Plaintiff was laid off from her position with the company on June 21, 2002 and informed Management that she would file a complaint with the "Board of Discrimination if she did not get her job back (**Exhibit 6A**).

11. Plaintiff informed Management that she was aware that two other cleaners (Maralez and Beval) were still working and being paid by Carabetta, on June 27, 2002. (**Exhibit 6B**)

12. Plaintiff was returned to work under the "sub" (Source 1, Inc.), on July 1, 2002. (**Exhibit 3**).

13. Plaintiff was again terminated on August 24, 2002. (**Exhibit 3**)

14. Plaintiff was not rehired, as were other workers, because she engaged in protected activity, namely, filing an MCAD complaint against the Defendant, on 8/27/02. **(Exhibit 3, Exhibit 7)**.

15. On March 31, 2003, the MCAD, following investigation, found probable cause as to the Plaintiff's allegations of sexual harassment, sexually hostile work environment and retaliation. **(Exhibit 8)**

16. The Plaintiff's statement of damages included lost wages in the amount of $5700.00 and pain and suffering damages of $20,000.00. **(Exhibit 1)**.

17. The company has allowed a pattern and practice of sexual harassment of female employees both in MA and CT and has followed a pattern of laying off female employees who complained of the harassment, referring to the termination as a layoff as the result of reorganization. **(Exhibit 3, Exhibit 5, Exhibit 7 and Exhibit 9)**

### Argument:

The Plaintiff, an African American female who worked as a cleaner for Carabetta, was exploited as to the terms and conditions of her employment, subjected to a sexually hostile work environment, suffered reprisal for engaging in protected activity, namely, filing a complaint with the MCAD, and was not rehired, in retaliation for having engaged in protected activity.

### Plaintiff's Employment Relationship With Carabetta:

Ms. Davis has maintained that she worked hours set and designated by her employer, at a location of the employer's choosing, and there is no indication in the record that she provided her own cleaning implements or cleaning supplies, therefore, she does not meet the definition of an "independent contractor."

The Defendant has referred to her variously as an "employee" and as an "independent contractor"**(Exhibit 3)**, however, testimony by Ms. Davis established that she received a check from which no deductions were taken and received neither a 1040 (W-2) nor a 1099 and the Defendant has not contradicted that fact **(Exhibit 10)**.

6

Further, the Defendant's list of employees from the Springfield Area (**Exhibit 2**) covering the period from 1/1/99 to 8/31/01, failed to list Ms. Davis as an employee, although both parties have acknowledged that she was working for Carabetta between June 2001 and August of 2001. A finder of fact could reasonably conclude that it is more likely than not that the Plaintiff was illegally employed by Carabetta as an "off-books" employee, to the company's advantage and to her detriment.

**Sexually Hostile Work Environment:**

In addition to the Plaintiff's own complaint of sexual harassment, she can document the complaints of four other female employees against the employer (**Exhibit 3, Exhibit 9**). The company's Sexual Harassment Policy (**Exhibit 4, Exhibit 7**) in place at the time of the incidents, provided to MCAD by the employer, was deemed non-compliant with applicable legal standards and the employer failed to document that the Plaintiff was ever provided with a copy of the policy.

In the first instance of sexual harassment by a member of management (Leroy Giaco Brocolli, a/k/a "Jacco"), the Plaintiff had no document in hand to guide her as to complaining of the treatment to which she had been subjected, and by her own admission, did not report the harassment to the company, however, as the harassment was committed by a member of the company's own management, the company was "aware" of the incident of sexual harassment.

In the second instance of sexual harassment, by Dino Brocolli, a/k/a "Jacco, Jr.," the Plaintiff complained to her immediate supervisor, Wayne Mitchell. Mr. Mitchell alleged to her that he would "talk to" the offender, however, she heard no more of the incident.

Dino Brocolli, in his affidavit, in referencing the "talk," states only that the Plaintiff's supervisor, Wayne Mitchell, stated, "she does have a nice body." This action, by the employer, is non-compliant with the company's own defective Sexual Harassment Policy, and is non-compliant with applicable legal standards. (Exhibit 1, Exhibit 7)

Complaints of sexual harassment by three other females had been contemporaneously filed with the MCAD (#00220441-Annette Magally Soto, #01230273-Alvina Jackson, #01230529, Madeline Valezquez) against the Defendant (Exhibit 3). An additional complaint was contemporaneously filed with the Connecticut Commission on Human Rights and Opportunities against Carabetta by Robin Ray on July 3, 2002, (See Exhibit 9), claiming both sexual harassment and retaliatory lay-off, which served to document that the company was tolerant of sexual harassment of its female employees and actively followed a policy of reprisal in the form or dismissal and/or lay-off against those females who complained and engaged in protected activity.

In a "hostile work environment" claim, the Plaintiff is obligated to show that the sexual harassment was sufficiently severe or pervasive to alter the conditions of the complainant's employment and create an abusive working environment. *Harris v. Fork lift Systems, Inc.,* 510 U.S. 17, 21, 126 L. Ed.2d 295, 114 S. CT. 367 (1993); *Conto v. Concord Hosp., Inc.,* 265 F.3d. 79, 82 (1st. Cir. 2001).

The Plaintiff can establish that she was exploited as to the terms and conditions of her employment, (Exhibit 10) that she was subjected to sexual harassment of a severe and degrading nature (Exhibits 5, 7) and that, based upon the number of sexual harassment complaints contemporaneously filed against the same employer (Exhibits 3, 9), the sexual harassment condoned by the company was severe and pervasive and created an abusive

working environment, both for the Plaintiff and for other female employees of the
company.

A complainant must demonstrate that the employer "knew or should have known of
the charged sexual harassment and failed to implement prompt and appropriate action."
*Crowley v. L.L. Bean, Inc.,* 303 F.3d. 254, 259 (1st. Cir. 2000). The first instance of
sexual harassment was perpetrated by a member of Carabetta's management, who "knew
or should have known" that his actions violated company policy (**Exhibit 4**). The second
instance was reported to the supervisor, who, by the perpetrator's own admission, resulted
in an improper discussion of the Plaintiff's body (See **Exhibit 7**). Although Dino Brocolli
alleged that he did not make the comment attributed to him, the statement he attributed to
Wayne Mitchell destroys the credibility of his denial (See **Exhibit 7**). The Plaintiff can
establish that management did not follow its own defective policy or any legally acceptable
policy in investigating the complaint of sexual harassment, and moved, shortly thereafter,
to effect a retaliatory lay-off of the Plaintiff.

MCAD investigator, Maryann Brunton, alleged in her Investigative Fact Sheet,
(**Exhibit 5**) "After the Commission's investigation of Complainant's (Ms. Davis's)
charges, the evidence reveals that the work environment in the Springfield office was
replete with sexually charged comments and conduct. The supervisors would repeatedly
subject female workers to sexually charged comments and offensive conduct. Sexually
offensive conduct was condoned by management and often never investigated." As such,
an inference can be drawn that supports the proposition that there was a continuing
pattern of sexual harassment of female employees at Respondent's (Carabetta's)

9

Springfield office.

**Retaliation:**

The Plaintiff was laid off twice. The first lay-off occurred on June 21, 2002. On that date. she left a voice mail message which was transcribed by management, in which she angrily informed Carabetta Regional Manager, Sal D'Aquila, that she would be at the "Board of Discrimination" filing a complaint as to Carabetta management and Jacco's son (Dino Brocolli). (See**Exhibit 6A**),  On June 27, 2002, the Plaintiff left a second voice-message (See**Exhibit 6B**) for Mr. D'Aquila, also transcribed, in which she again informed him that she went to the "Board of Discrimination" and opened a case against him, Jacco and Joe. These two voice-mail messages provided Carabetta management with clear notice that the Plaintiff intended to (or had) engaged in protected activity.

The Plaintiff was returned to work on July 1, 2002, allegedly having been hired by Source One, Inc., who were to serve as sub-contractors for services to Carabetta. The Plaintiff had contacted the MCAD on July 16, 2002 and had an interview as to the particulars of her complaint of discrimination, against Carabetta,  (See **Exhibit 1**)

The Defendant, in its Motion for Summary Judgment, incorrectly states that the Plaintiff did not contact the MCAD until 8/27/02, after she had been laid off. The date of 8/27/02 is the date when the MCAD filed the formal complaint against Carabetta, on Davis's behalf. The Formal Complaint was drafted by MCAD employees from information the Plaintiff provided on 7/16/02 and thereafter. **(Exhibit 1)**

The Plaintiff's second lay-off occurred on August 24, 2002, when Carabetta allegedly determined that the subcontract with Source One, Inc. was not working out. Although other employees who had originally been Carabetta employees were hired back

10

by Carabetta, the Plaintiff was not. The Plaintiff called her former Carabetta supervisor, Wayne Mitchell, and asked why she was not being hired back by Carabetta.

The affidavit supplied by MCAD investigator, Maryann Brunton (**Exhibit 7**) contradicts the Defendant's statement (attributed to Wayne Mitchell) that the Plaintiff was not hired back because she didn't want to work there, and confirms that Mitchell had the authority to rehire employees and that his decisions, according to Regional Manager, Sal D'Aquila, "went across his (D'Aquilla's) desk." (**Exhibit 7**)

Brunton's affidavit (**Exhibit 7**) confirms that Carabetta's reason for not re-hiring the Plaintiff, was that she had a charge pending against Carabetta at the MCAD, indicating that the first and foremost reason for the Defendant's failure to rehire the Plaintiff was because she had engaged in protected activity, namely, filing a complaint of discrimination with the MCAD and the EEOC.

The Defendant employer's stated reasons for not re-hiring the Plaintiff (that she called Wayne Mitchell, whom she "knew" did not have hiring power, and, that she didn't want to work there) can be interpreted by a reasonable finder of fact, as pretext. Carabetta's primary reason for not rehiring the Plaintiff was because Supervisor Wayne Mitchell and Manager Sal D'Aquila were aware that she had engaged in protected activity **Exhibit 6A, 6B and Exhibit 7)**.

Carabetta hired back Darnelle Harris and Carlos Morales as grounds cleaners on 8/26/02 and Keith Pemberton (painter), Raphael Rodriguez (maintenance) and David Smith (grounds cleaner) on 9/3/02, ( See **Exhibit 3),** and none of these employees had engaged in protected activity

These facts, taken in the light most favorable to the non-moving party give rise to an

inference of discriminatory animus and discriminatory retaliation by the Defendant as its

primary reason for failing and refusing to rehire the Plaintiff, while, at the same time,

rehiring five other workers who did not file complaints of discrimination against the

employer, either with the MCAD or the EEOC.

The Plaintiff has met her burden of establishing a *prima facie* claim of retaliation and

further, has provided clear and convincing evidence that the Defendant employer's alleged

reasons for not re-hiring her were pretext.

The Defendant argues, in its motion for summary judgment, (P. 6) that the Plaintiff

"seeks to give that action (her MCAD complaint) retroactive effect by claiming she

suffered adverse consequences as the result of the filing even before she filed, and well

before Baystate received notice of the filing." As previously stated, this is incorrect, as the

Plaintiff contacted the MCAD, as documented **(Exhibit 1)**, on 7/16/02, well in advance of

her final lay-off, which occurred on 8/24/02.  The Plaintiff informed the Defendant's

Regional Manager of her intent to file, first, in her voice-mail of June 21, 2002 **(Exhibit**

**6A)**, and, in her voice-mail of June 27, 2002, that she had filed **(Exhibit 6B)**, both voice

mails having been recorded and transcribed by the employer and offered to the MCAD.

Wayne Mitchell, who did have the power to rehire her after her lay-off on August 24,

2002, stated, as his first reason for not rehiring the Plaintiff, that she had filed charges

against the employer, with the MCAD. **(Exhibit 7)**  While the employer did not receive

the formal MCAD complaint until after she had been laid off, the employer had clear

notice of her intent to file as early as June 21, 2002, from the Plaintiff, herself, and

maintained a record of that information, in the form of transcripts of both the 6/21 and the

12

6/27/02 voicemail tapes.

To establish a *prima facie* claim of retaliation, the Plaintiff must establish:

1) that she engaged in protected activity and that the employer was aware of her protected activity;

2) that she suffered an adverse employment action; and

3) that there was a causal link between the adverse act and the causal activity.

*Wright v. CompUSA,* 352 F.3d 472, 478 (1st. Cir. 2003).

If the Plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Rodriguez v. Borringer Ingleheim Pharmaceuticals, Inc.,* 425 F.3d, 67, 84 (1st. Cir. 2005).

There is "no mechanical formula" for determining pretext , *Che v. Mass. Bay Transp. Auth.,* 342 F.3d 31, 39 (1st Cir. 2003) (internal citation omitted), and the courts have recognized that pretext can be proven in many ways, *see Santiago-Ramos v. Centenial P.R. Wireless Corp.,* 217 F.3d 46, 55 (1st Cir. 2000). One way is for the Plaintiff to show that the employer gave "different and arguably inconsistent explanations" for taking the adverse employment action. *Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 432 (1st. Cir. 2000).

Here, the Defendant argues, in its brief, that "Plaintiff knew to call Sal D'Aquila if she wanted a job." She did not, but she did call Wayne Mitchell. Mitchell stated to the MCAD investigator as his first reason for not hiring the Plaintiff back was that she had filed charges with the MCAD, and only later did he state that "he knew she didn't want her job back. Further, D'Aquila, in the same meeting with the MCAD investigator, did not deny that Mitchell had the authority to hire the Plaintiff back. (See Brunton Affidavit

13

**Exhibit 7)**.  The Plaintiff, therefore, can meet her burden of showing that the employer's stated reasons for not re-hiring her were pretext, and that the real reason for failing to rehire her as a cleaner was because management was aware that she had engaged in protected activity, because she had so informed Mr. D'Aquila in her (employer-transcribed) phone messages to him on June 21 and June 27, 2002 **(Exhibits 6A, 6B)**.

### Conclusion

The Plaintiff can meet her burden of showing that the conditions of her employment were irregular (and possibly illegal), at the employer's choice, and that she was subjected to a sexually charged and pervasively sexually hostile work environment in which she was subjected to extreme humiliation, to the extent that it altered working conditions for her and other female employees of the company.  Further, she can establish a *prima facie* claim of retaliation which resulted in her not being rehired.  Lastly, she can establish that the employer's reasons for failing to re-hire her were pretext and that the true reason for the employer's retaliation was because she had engaged in protected activity.

For these reasons, the Defendant's motion for summary judgment must be denied, as genuine issues of material fact remain which are issues for the trier of fact.

The Plaintiff,

**Catalina Davis**
**74 Hill Street**
**West Springfield, MA 01089**
Tel: (413) 246 4612
(413) 246 -6221
(413) 739-8527

12/14/06
Date:

14

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was mailed, by first class mail, postage prepaid, to Attorney Ralph Carabetta, this ___14___ day of December, 2006.

Catalina Davis

## PLAINTIFF'S LIST OF EXHIBITS

**Exhibit 1**

**MCAD and EEOC Filings:**
**7/16/02 MCAD Intake Form**
**8/27/02 Formal Complaint**
**2/25/03 Amended Complaint**
**10/14/04 Request to File Civil Complaint**
**10/20/04 Allowance by Commissioner**
**EEOC Charge (Sex Discrimination and Retaliation)**
**EEOC Charge Transmittal**
**4/27/05 EEOC Closing and Notice of Suit Rights**
**MCAD Affidavit of Attest of Records**

**Exhibit 2**

**Defendant's List of Springfield Employees: 1/1/99-8/31/01**

**Exhibit 3**

**Defendant's Responses to MCAD Investigator on Jackson, Valezquez and Davis Cases**

**Exhibit 4**

**Defendant's Sexual Harassment Policy and Distribution list**

**Exhibit 5**

**MCAD Investigation Fact Sheet: Davis v. Carabetta, Docket No. 022302968**

**Exhibit 6A and 6B**

**6A 6/21/02 Transcript of voice message left by Davis for Carabetta Manager, Sal D'Aquila**
**6B 6/27/02 Transcript of voice message left by Davis for Carabetta Manager, Sal D'Aquila**

**Exhibit 7**

**Affidavit of MCAD Investigator Maryann K. Brunton**

**Exhibit 8**

**Notice by MCAD Commissioner of finding of Probable Cause in Davis v. Carabetta**

**Exhibit 9**

**CT Commission on Human Rights and Opportunities Filing:  Robin Ray v. Carabetta Property Management, Inc.**

**Exhibit 10**

**Plaintiff's Deposition taken by Defendant, June 2006:  Page 8**

# Massachusetts Commission Against Discrimination

436 Dwight Street, Suite 220 Springfield, Ma. 01103
(413) 739-2145

### General Employment Interview Form

Your appointment is with: _Sarah Davis_ Date: _7/14_ Time: _____

Complainants Name: _~~Da~~ Davis        Catalina_
                          **(Last Name)**                    **(First Name)**                        **(Middle Initial)**

Address _235 Union St        West Springfield    01089_

Birthdate _____ Age _____ Social Security# _____-___-_____ Race/Color _____

Marital Status _____ Number and Ages of children _____

Educational Attainment/Grades Completed _____

Telephone# (daytime)(___) _____ (Nighttime)(___) _739-8527_ Sex _female_

Name of Employer _Carrabetta_

Address (please indicate zip code) _4 Federal Ct_
_Springfield, MA        01109_

Telephone # (___) _737-7847_ No. of employees: 0-14  15-19  20-24  25+ _X_

Date of the last discriminatory act: _May 9_ Date of Hire _June 2001_

Position Title(s) _Cleaning Lady (sub)_

Description of Qualifications for the position (attach resume) _____

Underline/Circle/Check all categories in which you believe you have been discriminated against:

| | |
|---|---|
| [] Race | [] Color |
| [] National Origin/ Ancestry | ☒ Sex |
| [] Age | ☒ Sexual Harassment |
| [] Maternity Leave | [] Sexual Orientation |
| [] Religion | [] Criminal Record |
| [] Handicap | |

In general, this employment complaint is being filed against the Respondent because of:

| | |
|---|---|
| [] Termination | [] Lay off |
| [] Failure to Hire | [] Terms & Conditions |
| [] Denial of Promotion | [] Retaliation |
| [] Denial of Reasonable Accommodation | [] Handicap |
| [] Other _____ | |

Summarize in your own words what happened. Use this space for a brief statement of the facts and provide the name(s) and titles of the person(s) you believe responsible. List each event that you believe was discriminatory and provide the date for that event.

_____
_____
_____
_____
_____
_____
_____

DISCRIMINATION COMPLAINT
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND EEOC

FEPA:  022302968
EEOC NO.: 16CA2C3ic8

FILING DATE:  8/27/02
VIOLATION DATE: 6/29/02

NAME OF AGGRIEVED PERSON OR ORGANIZATION:

Au A 7 200

Catalina Davis
235 Union St.
West Springfield, MA 01089

TELEPHONE NUMBERS:
HOME: (413) 739-8527
BUSINESS:

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY OR
STATE/LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

Carrabetta
4 Federal Ct.
Springfield, MA 01109

TELEPHONE NUMBER:
(413) 737-7847
            NO. OF EMPLOYEES: 25+

CAUSE OF DISCRIMINATION BASED ON:  Sexual Harassment and Retaliation

On June 29, 2002, Carrabetta discriminated against me by laying me off in retaliation for
opposing sexual harassment, in violation of M.G.L. c.151B §4, ¶ (4, 16A).

THE PARTICULARS ARE:

1. Carrabetta hired me in June 2001 as a member of the cleaning department. My job
   performance was consistently satisfactory and I had a perfect work record with the
   company.
2. In August of 2001, Jacco, a head boss, asked me to go to Kahoots with him. When I
   asked what Kahoots was, he said it was a strip club. He said that I did not have to work
   at Carabetta; that he would pay me if I gave him a lap dance and any of my friends who
   would want to do it as well. I told him no, and he told me to let him know if I ever
   changed my mind. Jacco's advances offended me and were both unsolicited and
   unwelcome. However, I never reported this incident.
3. On May 9, 2002, Jacco Jr. (Jacco's son), a construction worker, asked me to take him to
   an apartment location, Building 31 Oswego. During our walk over to the building, Jacco
   Jr. stared at my chest and said "you have some nice titties." This verbal and sexual
   comment was unsolicited and unwelcome by me.
4. On May 9, 2002, I reported the incident to Wayne Mitchell, the Springfield Manager.
   Mr. Mitchell told me that he would talk to Jacco Jr. I never heard anything from Mr.
   Mitchell regarding Jacco Jr.'s comment. When I did ask Mr. Mitchell about the situation,
   he told me that he talked to Jacco Jr. about what happened, but did not give me any more
   information.
5. On June 29, 2002, Carrabetta laid me off, claiming that they were going to give the
   cleaning contract to Source 1, hoping they would operate the department more efficiently.

At the time, I was led to believe that the entire cleaning department would be laid-off, but could be rehired through Source 1.

6. The four other members of the cleaning department remained employed after I was laid-off. When I called Sal, the regional manager, to ask him why I was the only one without a job, he just told me that Carrabetta was working things out to see which employees they could keep.

7. I was employed by Carrabetta longer than two other cleaning department employees who were not laid-off. One employee retained by Carrabetta, Bebba, was a very unreliable worker. The cleaning department employees are supposed to have their own transportation to and from sites, but Bebba does not have a car and so she had to wait for to get rides from servicemen to her job sites.

8. I believe the Respondent discriminated against me by laying me off in retaliation for opposing a sexual and unwelcome verbal comment by a co-worker and because Jacco believed I would then report the sexual harassment he subjected me to.

I ALSO WANT THIS CHARGE FILED WITH EEOC:  YES
I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE NUMBER AND I WILL COOPERATE FULLY WITH THEM IN THE PROCESSING OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES.

I SWEAR OR AFFIRM THAT I HAVE READ THIS COMPLAINT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Catalina Davis

SWORN TO AND SUBSCRIBED BEFORE ME THIS DAY OF 27 $^{th}$ / August, 2002.

NOTARY PUBLIC:

My Commission Expires:  02/07/03



THE COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION
436 DWIGHT STREET, SUITE 220
SPRINGFIELD, MA 01103



Mitt Romney
Governor

Kerry Healey
Lieutenant Governor

Eric A. Kriss
Secretary

Dorca I. Gómez
Chairwoman

Cynthia A. Tucker
Commissioner

Walter J. Sullivan, Jr.
Commissioner

Date:  February 28, 2003

Ms. Catalina Davis
235 Union Street
West Springfield, MA 01089

Jeffrey M. Rosin, Esquire
Barry A. Guryan, Esquire
Epstein, Becker & Green
111 Huntington Avenue, 26th Floor
Boston, MA 02199-7610

Re:   *Davis v. Carrabetta*
No:   022302968

Dear Parties:

Enclosed please find an amended complaint and an order from the investigating commissioner regarding the above-referenced case.   Thank you for your cooperation in this matter.

Very truly yours,

_____
Maryann K. Brunton
Compliance Officer

Tel: (413) 739-2145                    Fax: (413) 784-1056

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CATALINA DAVIS,
Complainant

v.

CARABETTA
Respondent

Docket No: 022302968

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## FIRST AMENDED COMPLAINT

Pursuant to 804 CMR 1.10 (6) of the Commission's Rules of Procedure, the above-referenced complaint is hereby amended and now reads as follows:

1.    I, Catalina Davis, of 235 Union Street, West Springfield, MA 01089, charge Carabetta Management, located at 4 Federal Court, Springfield, MA 01109, with perpetrating unlawful discrimination against me by retaliating against me because I opposed unlawful discrimination and because I filed a charge with the Massachusetts Commission Against Discrimination (022302968).

2.    While employed at Carabetta my work performance was satisfactory.    On or about August 26, 2003 two employees were rehired at Carabetta.    September 3, 2002 three more employees were rehired at Carabetta.    I was not rehired because I filed a charge of discrimination at the MCAD.

3.    On January 13, 2003, I attended an investigative conference at the Massachusetts Commission Against Discrimination regarding my discrimination charge. At the conference, the Commission's investigator, Maryann K. Brunton, asked Mr. Wayne Mitchell why he did not rehire me. Mr. Mitchell admitted to Ms. Brunton that the reason was because I had filed a claim (at the MCAD) at the time he was calling other employees back to work. Mr. Mitchell admitted that he contacted the other employees to ask them if they were interested in being rehired at Carabetta, however, he did not recall if he had called me.    Ms. Brunton confirmed with Mr. Mitchell that he was referring to my charge at the MCAD and not another "claim" filed elsewhere.

4.    I therefore charge that Respondent subjected me to unlawful retaliation by denying me an equal opportunity to be rehired for a position I was qualified to perform. Respondent's conduct is in violation of M.G.L. ch. 151B, s4(4) and Title VII of the Civil Rights Act of 1964, as amended.

5.    The particulars as cited in the original complaint are herein incorporated by reference.

I SWEAR OR AFFIRM THAT I HAVE READ THIS COMPLAINT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_____
(SIGNATURE OF COMPLAINANT)

SWORN TO AND SUBSCRIBED BEFORE ME THIS 25 DAY OF February , 2003.

_____
NOTARY PUBLIC

My Commission Expires:          MARYANN K. BRUNTON
                                NOTARY PUBLIC
                                MY COMMISSION EXPIRES
                                JULY 31, 2003

Angela S. Robertson
Commission Counsel
Massachusetts Commission Against Discrimination
436 Dwight Street, Room 220
Springfield, MA 02108

Re: *Cresson / hu 's & Chanda*
MCAD No: *C 0230 2965*
EEOC No.: *hur1 20 0163*

Dear Ms. Robertson:

I hereby request permission from the Investigating Commissioner to voluntarily withdraw the above–referenced complaint I filed with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission (if applicable).

I am withdrawing my complaint for the following reason:

[X]  I want to file my case in Superior Court under Chapter 478.

[ ]  The parties in this matter have come to a voluntary resolution.

[ ]  I am no longer interested in pursing this matter.

I understand that by making this request no further complaint on the same matter may be brought before the Massachusetts Commission Against Discrimination. I have also been advised that it is unlawful for any person to threaten, intimidate or harass me because I have filed this complaint. I have not been coerced into requesting this withdrawal.

Sincerely,

_____
Complainant

_____
Date

# COMMONWEALTH OF MASSACHUSETTS

COMMISSION AGAINST DISCRIMINATION
436 Dwight Street, Suite 220
Springfield, Massachusetts 01103

(413) 739-2145
fax: (413) 784-1056

October 28, 2004

Catalina Davis
74 Hill Street
West Springfield, MA   01089

RE:  **Catalina Davis .v. Carabetta Management**
NO:  022302968      EEOC:    16CA203108

Dear Ms. Davis:

Pursuant to M.G.L.A. Chapter 151B, Section 9, (Chapter 478 of the Acts of 1974), the Complainant has removed the above-referenced complaints for the purpose of filing a civil action in the same matter in state court.   The complaints before the Commission are hereby dismissed without prejudice as to the merits.

Please be advised that complainant is barred from bringing the same matters before this Commission.

Very truly yours,

Cynthia A. Tucker
Investigating Commissioner

cm

cc:  Ralph Carabetta, Esquire
     Attorney at Law
     364 Ocean Street
     Revere, MA  02151

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

| | | |
|---|---|---|
| Carrabetta | Person Filing Charge: | Catalina Davis |
| 4 Federal Court | This Person (Check One): | (√) Claims to be aggrieved |
| Springfield, MA 01109 | | ( ) Is filing on behalf of |
| | Date of Alleged Violation: | 06/29/02 |
| | Place of Alleged Violation: | Springfield, |
| | EEOC Charge Number: | 16CA203108 |
| | MCAD Docket Number: | 02SEM02968 |

NOTICE OF CHARGE OF DISCRIMINATION WHERE AN FEP AGENCY WILL INITIALLY
PROCESS (See Attached Information Sheet For Additional Information)

You are hereby notified that a charge of employment discrimination under

    [ √ ] Title VII of the Civil Rights Act of 1964

    [ ] The Age Discrimination in Employment Act of 1967 (ADEA)

    [ ] The Americans Disabilities Act (ADA)

Has been received by

[ ]   The EEOC and sent for initial processing to   MCAD

                                                 (FEP Agency)

[√]  The Mass. Commission Against Discrimination

     (FEP) Agency and sent to the EEOC for dual filing purposes.

While the EEOC has jurisdiction (upon the expiration of any deferral requirements if this is a Title VII or ADA Charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This likelihood is increased by your active cooperation with the Agency.

[X]  As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's issuing a final finding and order. If the agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained on the second page of this form apply.

For further correspondence on this matter, please use the charge number(s) shown.

[ ]  An Equal Pay Act Investigation (29 U.S.C 206(d) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

[X]  Enclosure: Copy of the Charge

| Basis of Discrimination | | | | |
|---|---|---|---|---|
| ( ) Race | ( ) Color | ( √ ) Sex | ( ) Religion | ( ) National Origin |
| ( ) Age | ( ) Disability | ( ) Retaliation | ( ) Other | |

Circumstances of alleged violation:

    SEE ENCLOSED COPY OF THE CHARGE OF DISCRIMINATION (or EEOC FORM 5)

EEOC Charge Number 16CA203108, EEOC Transmittal Letter to Respondent

| Date | Type Name/Title of Authorized EEOC Official | Signature |
|------|---------------------------------------------|-----------|
| 10/2/2002 | Robert L. Sanders, Director | |

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

To:  **EEOC**                          Date:                          **9/11/2002**
     **JFK Federal Building**          **EEOC Charge Number:**        **16CA203108**
     **Fourth Floor, Room 475**        **706 Agency Charge Number:**  **02SEM02968**
     **Boston, MA 02203**

## SUBJECT: CHARGE TRANSMITTAL
### Catalina Davis v. Carrabetta

Transmitted herewith is a charge of employment discrimination initially received by the:
___ EEOC    X Mass. Commission Against Discrimination on    08/27/02
            (Name of 706 Agency)                           (Date of Receipt)

___Pursuant to the work-sharing agreement, this charge is to be initially processed by the EEOC.
 X Pursuant to the work-sharing agreement, this charge is to be initially processed by the 706 Agency.
     ___EEOC requests a waiver       ___706 agency waiver
     ___No waiver requested           X 706 agency will process the charge initially

Please complete the bottom portion of this form to acknowledge receipt of the charge and where
appropriate, to indicate whether the 706 agency will initially process the charge.

====================================================================================
Typed Name of EEOC or Agency Director            | Signature
Dorca I. Gomez, Chairwoman                       |
====================================================================================

   Catalina Davis                                Carrabetta
(Charging Party)                                 (Respondent)

To whom it may concern:
___ This will acknowledge receipt of the referenced charge and indicate the agency's intention to initially
process the charge.
___ This will acknowledge receipt of the referenced charge and indicate the agency's intention not to
initially process the charge.
___ This will acknowledge receipt of the referenced charge and indicate the Agency's intention to
dismiss/close/not docket the charge for the following reason:

====================================================================================
Typed Name of Agency Director                    | Signature
Robert L. Sanders                                |
====================================================================================

The Commonwealth of Massachusetts               Date:                          9/11/2002
Commission Against Discrimination               EEOC Charge Number:            16CA203108
436 Dwight Street, Rm  220 , Springfield, MA     706 Agency Charge Number:      02SEM02968
01103

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Catalina Davis**
**235 Union Street**
**West Springfiel, MA 01089**

From: **Boston Area Office**
**John F. Kennedy Fed Bldg**
**Government Ctr, Room 475**
**Boston, MA 02203**

On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a));

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16C-2002-03108 | **Anne R. Giantonio,**<br>**Intake Supervisor X** | **(617) 565-3189** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

While reasonable efforts were made to locate you, we were not able to do so.

You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

**X** Other (briefly state)    **Charging Party is pursuing claim in another forum.**

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosure(s)

**Robert L. Sanders,**
**Area Office Director**

(Date Mailed)

cc: **CARRABETTA**
**4 Federal Court**
**Springfield, MA 01109**

## THE COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION

Catalina Davis,
      Complainant,

           v.

Carrabetta,
      Respondent,

)
)
)
)
)
)
)
)
)

MCAD Docket No. 022302968

### AFFIDAVIT

I, Patty Woods, hereby depose and say:

1.   I am the Keeper of Records with the Massachusetts Commission Against Discrimination, Springfield, MA office (hereafter "the Commission"), and as such am familiar with the record-keeping procedures of the Commission.

2. I have reviewed the copies of the following documents attached hereto.

3.   After a review of the copies and a comparison of those copies with records kept in the files of the Commission, I hereby certify that the copies are true and accurate copies of documents actually in the records of the Commission.

4. Such records and documents are kept in the regular and usual course of business by the commission.

5. The above statements are made and signed under pains and penalties of perjury this 6th day of May, 2005.

Patty Woods
Keeper of Records

Subscribed and sworn to before me on the 6th day of May, 2005.

Gilbert May, Notary Public
My Commission expires:

10 - 30 - 10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.

# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW

111 HUNTINGTON AVENUE
26TH FLOOR
BOSTON, MA 02199-7610
617.342.4000
FAX: 617.342.4001
EBGLAW.COM

JROSIN@EBGLAW.COM

**RECEIVED**

FEB 05 2003

COMMISSION AGAINST
DISCRIMINATION/SPRINGFIELD

January 31, 2003

## OVERNIGHT MAIL

Ms. Maryanne Brunton, Investigator
Massachusetts Commission Against Discrimination
436 Dwight Street, Suite 200
Springfield, MA 01103

> Re: Jackson v. Baystate Property Mgmt. & Maintenance, Inc. et al.
> MCAD Docket No. 01230273
> Velazquez v. Baystate Property Mgmt. & Maintenance, Inc. et al.
> MCAD Docket No. 01230529
> Davis v. Carabetta Managament Co.
> MCAD Docket No. 02SEM02968

Dear Ms. Brunton:

On behalf of the Respondent in the above-referenced actions, as you requested, enclosed please find the following:

Tab Number:

1. The personnel files of: (a) Alvina Jackson; (b) Madeline Velazquez; (c) Wayne Mitchell; and (d) Giaco Broccoli.

2. The names, addresses, phone numbers and job titles of all persons employed in 4 Federal Court, Springfield, MA from January 1, 1999 to August 31, 2001 (this list should include the information for Dietrich Watkins).

   > *This item will follow under separate cover as the company's payroll department needs more time to gather the information.

ATLANTA · BOSTON · CHICAGO · DALLAS · HOUSTON · LOS ANGELES
NEWARK · NEW YORK · SAN FRANCISCO · STAMFORD · WASHINGTON, D.C.

EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY

Maryanne Brunton
January 31, 2003
Page 2

3.      A list of all other MCAD complaints filed in the last five years.

        Other than the three cases referenced above, there was a discrimination
        complaint filed by Anned Magally Soto at the MCAD, # 00230441. Mr.
        Gilbert May of the MCAD investigated this case.

4.      The outsourcing contract with Source One.

        Please note that there was a pagination problem with the contract, but we
        have provided a copy of what we have in our files.

5.      A list of all employees laid-off when Source One took over maintenance/cleaning
        responsibilities as well as a list of all employees hired back when the Company
        reassumed such responsibilities.

        Employees Laid-Off                    Employees Hired Back

        1.    Saul Caraballo                   1.    Darnelle Harris
        2.    Jorge Colon                      2.    Carlos Morales
        3.    Catalina Davis                   3.    Keith Pemberton
        4.    Laughton Harewood                4.    Rafael Rodriguez
        5.    Darnell Harris                   5.    David Smith
        6.    Carlos Morales
        7.    Keith Pemberton
        8.    Shawn Peliz Reya
        9.    William Rodgers
        10.   Rafael Rodriguez
        11.   David Smith
        12.   Joselito Velez

6.      A copy of the tape(s) of the transcriptions of Catalina Davis' voicemails to Sal
        D'Aquila.

7.      Copies of any supposed draft affidavits that Alvina Jackson and/or Detric Watkins
        were asked to sign in the Anned Magally Soto case.

        No such items have been located.

8.      A list of other employees who were terminated when Alvina Jackson's
        employment was terminated and/or the names of those employees who performed
        Jackson's job.

Maryanne Brunton
January 31, 2003
Page 3

As explained at the investigative conference, Jackson's termination was part of an operational reorganization in Springfield. As such, various employees continued to perform their job duties after Jackson's termination, but instead reported directly to Meriden, Connecticut. As set forth below, certain of these persons were already employed at the time of Jackson's termination.

(1)    Detric Watkins – Employed from 11/8/99 to 5/31/02

(2)    Jaqueline Diaz – Re-hired 4/2/01 after being previously employed from 7/16/98 to 8/22/00

(3)    Mildred Torres – Employed from 7/31/01 to 12/7/01

(4)    Marabelle Gonzalez – Hired October/November 2001

Not until February 2002 did the Company have a new "Property Manager" in Springfield, Mike Gosselin. Mr. Gosselin, however, has had much greater responsibilities than Jackson ever had. He does not simply manage the rental process, but in addition, manages all aspects of the Springfield property, including maintenance, repair and budgetary matters.

Please do not hesitate to contact me at (617) 342-4076 if you have any further questions regarding the above.

Thank you for your attention.

Very truly yours,

Jeffrey M. Rosin

JMR:dw

## CARABETTA MANAGEMENT CO.

### Subject:  Company Policy Against Sexual Harassment

Carabetta Management Co. and its affiliates are committed to providing a work environment where women and men can work together comfortably and productively, free from sexual harassment. Sexual harassment is not only against company policy, but it is also illegal under both state and federal law. Sexual harassment will not be tolerated here.

Sexual harassment means unwelcome sexual advances and unsolicited contact that has sexual overtones. The following conduct is prohibited:

- written contact, such as sexually suggestive or obscene letters or notes,

- verbal contact, such as sexually suggestive or obscene comments, jokes about gender-specific traits, or sexual propositions,

- physical contact, such as unwanted hugs, touching or kisses, pinching, brushing against another's body, impeding or blocking movement, and

- visual contact, such as gesturing, displaying sexually explicit or suggestive objects, pictures, cartoons, posters or magazines.

Any employee found to have violated this policy shall be subject to appropriate disciplinary action, including reprimand, suspension or discharge, according to the findings of the complaint investigation.

All complaints of sexual harassment should be made to the Social Director, who can be reached at 203-237-7400. All complaints will be handled as confidentially as possible.

_____          _____

Date                             Signature

*Mary*

# Carabetta
# Management
# Company

Carabetta Management
Company

Phone:
FAX:
email:

# *Memorandum*

*To:*     *Attached List*
*From:*   *Joe Carabetta* Joe Carabetta
*cc:*
*Date:*    *Thursday, June 1, 2000*
*Subject:* *Sexual Harassment Avoidance Course*
         *Tuesday, June 13, 2000*

We have scheduled a Seminar on "Sexual Harassment Avoidance Training".

Please make arrangements to attend. We will be putting together
transportation from 200 Pratt Street to Bella Vista, due to the limited
parking at Bella Vista.

      Tuesday, June 13, 2000  9:00 - 11:00am, at Bella Vista.
           BLDG E. 18th FLOOR

Please contact Sherri Condon at 639-5162 or Sal D'Aquila at 639-5115 to make
arrangements for the transportation, by June 8, 2000.

Coffee, Beverages and Continental Breakfast will be served

Thank you in advance for your cooperation.

Bus 8:15

# *CARABETTA ORGANIZATION*  Memo

**TO:**      All Employees
**FROM:**   Joseph F. Carabetta
**DATE:**   March 18, 1999

I would like to take this opportunity to thank all employees for their past loyalty and cooperation. As many of you know, we are a service organization and without employees such as yourself, our service would not receive the excellent ratings we now enjoy. For the benefit of all employees, I think it is important to again remind you of our company policy against sexual harassment. While everyone has already received a copy of our policy, I am attaching an additional copy for your future use and reference.

On a separate note, it has come to my attention that there are certain employees who do not always act in the best interests of the Carabetta Organization during working hours. Accordingly, their goals may be different from ours. Our organization always consisted of "team players" and I would suggest that any employee who does not wish to be a member of the Carabetta "team", should perhaps seek employment elsewhere. Of course, 1 am always open to constructive criticism and suggestions.

Once again, to all those employees who have shown their loyalty and dedication to our organization, on behalf of myself and the entire Carabetta family, I extend to you our sincere
**RECEIVED**
gratitude.

Commission Against
Discrimination
Springfield Office

By Property

| | |
|---|---|
| Bella Vista - All | Alfano; Lenny |
| | Baran; Karen |
| | Halley; Martin |
| | Halley; Thomas |
| | Morgan; Dennis |
| | Rochette; Steve |
| Bayberry/New Meadows | Rushford; Bill |
| Bradley I & II | Kuhn; Ed |
| Brookside, CWI & II | Fontanez; Joe |
| Butler St/Harbor | Gasper; Ed |
| Byam/Deerfield/Sunset | Godfrey; Cathy |
| Harbor Brook | Villanueva; David |
| Hedgewood/Norwich | Hawryluk; Steve |
| Hillside/Maple/Vict Twr | Matias; Jose |
| Josephine Towers | Skirkanich; Michael |
| Kennedy | Jensen; David |
| Kingswood | Freeman; George |
| Meadoway/Rose | Girgenti; Aldo |
| Newfield/Stoneycrest Twr | Simeone; Anthony |
| Oakland/WF Glen | Sanchez; Elizabeth |
| Parkside | Moreno; Saul |
| Redstone | O'Brien; Timothy |
| Saybrook/Smrhill/Woodb | Pulino; Franco |
| Sheldon Oak | Salomone; Ernest |
| Silver Pond | Bortoland; Joe |
| Sleeping Giant | Grylls; Timothy |
| Springfield Properties | Mitchell; Wayne |

Management Office

Regional Managers
    Bozek; Andy
    D'Aquila; Sal
    Lush; Cindy

    Dept Managers
    Carabetta; Joey

    Memery; Bob
Szymaszek; Charlie

    Furlong; Joyce
Logodicio; Diane
    Sattler; Sandy

    Kauffman; Mark
    Papallo; Rick
    Walker; Stan

    Broccoli; Giaco

    Baigert; Mary
~~Carabetta-Jodin; Sharon~~
    Condon; Sherri

    Downes; Ron

    Isko; Norman
    Smith; Sarah

## COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION
## INVESTIGATION FACT SHEET

**To** :   Attorney Jeffrey Rosin
Epstein Becker & Green P.C.
111 Huntington Avenue 26th Floor
Boston, MA 02199-7610

**From**: Commonwealth of Massachusetts
Commission Against Discrimination
436 Dwight Street, Room 220
Springfield, MA 01103

| Docket No. | EEOC No. | Investigator | Telephone No. |
|---|---|---|---|
| 022302968 | 16CA203108 | Maryann K. Brunton | (413) 739-2145 |

**Case Name**:

## Catalina Davis v. Carabetta Management/ Baystate Property Management

### Investigation Summary

On August 27, 2002, Complainant filed a complaint with this Commission charging that the Respondent subjected her to a sexually hostile work environment in violation of M.G.L. Chapter 151B, §4(1) and (16A) and Title VII of the 1964 Civil Rights Act, as amended. The Complainant further charges that Respondent retaliated against her when she complained about the sexual harassment in violation of M.G.L. Chapter 151B, §4, (4A).

Respondent, Baystate Property Management/Carabetta Management, denies all allegations of unlawful discrimination and states that Respondent was unaware of the sexually offensive conduct alleged by the Complainant. Respondent further denies any retaliatory conduct and states that Complainant was laid off for a legitimate, non-discriminatory reason, namely, Respondent's reorganization of office operations.

### Issue(s) Investigated:

The substantive issues in dispute concern Complainant's allegations that Respondent discriminated against her by subjecting her to sexually offensive conduct, which created a hostile, humiliating and offensive work environment and whether Respondent retaliated against her once she complained of the sexually offensive conduct.

### Investigation Reveals:

Respondent, Baystate Property Management, employs more than twenty-five (25) employees, and is an employer as defined in M.G.L. Chapter 151B, §1, Paragraph 5.

In June 2001, Respondent hired Complainant as a cleaner. Complainant's employment duties included cleaning apartments, apartment building common areas and grounds.

1

Complainant alleges that she was subjected to sexually offensive conduct and remarks that created a hostile and offensive work environment. As evidence in support thereof, Complainant contends that manager, Mr. Giacco Broccoli, subjected her to sexually charged comments. More specifically, Complainant states that in August 2001, Mr. Broccoli invited Complainant to a strip club and told her that she did not have to work at Respondent's anymore because he would pay her money if she agreed to perform lap dances for him and his friends. Complainant asserts that she rebuffed Mr. Broccoli's advances.

As further evidence of sexual harassment, Complainant avers that on May 9, 2002, Mr. Broccoli's son, Mr. Dino Broccoli, also made sexually offensive remarks. Complainant asserts that Mr. Dino Broccoli stared at her breasts and stated, "you have some nice titties." On the same day, Complainant reported the sexually offensive conduct to her immediate supervisor, Mr. Mitchell. Mr. Mitchell responded that he would talk to Mr. Broccoli. Complainant contends that no remedial action was ever taken by the Respondent to address her allegations of sexual harassment.

In contravention of Complainant's above-mentioned assertions, Respondent denies all allegations of discrimination and further asserts that management was unaware of Complainant's allegations of sexual harassment until receipt of the complaint filed in this case. Respondent does admit that Complainant advised Mr. Mitchell of the sexually offensive remarks made by Mr. Broccoli's son. However, Respondent states that Mr. Mitchell did speak with Mr. Dino Broccoli and then "followed up with Complainant that same day." In support of its denial of Complainant's allegations of sexual harassment, Respondent submitted two affidavits, one from Mr. Dino Broccoli and one from Mr. Mitchell, refuting Complainant's allegations and further stating that the Complainant was an active participant in the sexual banter.

After the Commission's investigation of Complainant's charges, the evidence reveals that the work environment in the Springfield office was replete with sexually charged comments and conduct. The supervisors would repeatedly subject female workers to sexually charged comments and offensive conduct. Sexually offensive conduct was condoned by management and often never investigated. Furthermore, two female co-workers of the Complainant have also filed charges with this Commission alleging sexual harassment by Mr. Mitchell and other supervisors. As such, an inference can be drawn that supports the proposition that there is a continuing violation of the Commonwealth's anti-discrimination laws and a repeated pattern of sexual harassment of female employees at Respondent's Springfield office. Thus, genuine issues of material fact exist with respect to whether Complainant was sexually harassed while in Respondent's employ. These issues are more appropriately reserved for determination at a public hearing.

Lastly, the Complainant further asserts that she was unlawfully retaliated against and ultimately discharged because of her complaints of sexual harassment. In support of this assertion, Complainant states that since her termination from Respondent's employ, a number of former employees were re-employed by the Respondent. Respondent refutes Complainant's assertion of pretext and states that Complainant was discharged because the cleaning duties were outsourced to an independent contractor. Moreover, during the investigative conference held in this case, Respondent's supervisor, Mr. Mitchell, admitted that Complainant was not considered for re-hire because she had a complaint

2

pending with this Commission. Thus, genuine issues of material fact exist with respect to whether Complainant was retaliated against for complaining of sexual harassment. These issues are more appropriately reserved for determination at a public hearing.

## CONCLUSION:

Based on the foregoing findings, a finder of fact could form a reasonable belief that Respondents discriminated against Complainant by subjecting her to a sexually hostile work environment and retaliating against her for complaining of the sexual harassment. Credibility issues exist which are better determined by a hearing officer who may observe witnesses firsthand. Further, genuine issues of material fact exist which are better reserved for determination at a public hearing. Therefore, a finding of probable cause is warranted.

## DISPOSITION:

Therefore, pursuant to Section 5 of Chapter 151B of the Massachusetts General Laws, and in conformity with the foregoing Findings of Facts, I have this day found that probable cause exists for crediting the allegations of the subject complaint. Pursuant to Section 5, the parties will be afforded an opportunity to participate in a conciliation conference at the offices of the Commission. If the parties do not choose to participate, or if such conference does not result in an informal resolution of this matter, the case will be certified for public hearing and a designated Hearing Officer will render a final disposition on this matter.

Date:

Maryann K. Brunton
Compliance Officer

Migdalia Rivera
Supervisor

Cynthia A. Tucker
Investigating Commissioner

cc:     Ms. Catalina Davis
        235 Union Street
        West Springfield, MA 01089

3

## STATEMENT OF DAMAGES

<u>Wage Loss</u>:

| | |
|---|---|
| Unemployed from 6/29/02 through 3/19/03<br>(Wage loss per week @200.00) | $5,700.00 |
| General damages (Pain and suffering) | $20,000.00 |
| TOTAL DAMAGES | $25,700.00 |

6A

Message left on Voice Mail of Sal D'Aquilla on Friday, June 21, 2002 at 8:19 a.m.:

Good morning, this is Catalina. I'm not going to be rude, I'm going to be polite. I will be at the Board of Discrimination, filing a complaint towards Carabetta Management and Jocko's son for sexually harassing me. Furthermore, I've been here a year, and I does my damn job. Whether I have my attitude, I does my job. That office has two young girls who doesn't do nothing all day. Why, just last week, I bust my ass painted all the blood off the fucking walls. I've been busting my ass vacuuming, and mopping up and down the steps, 12 buildings and I accepted a $100. And you have the audacity to tell Wayne I can't come back. What's the reason? Y'all better have a better one. Oh, furthermore, it's going to be a better one when I'm done. Cause it's not going to be like Dee Dee. Ya ain't gonna get rid of me, [UNREADABLE] I know I didn't do nothing. [UNREADABLE] I don't do nothing, cause I just said, fuck it, I don't care about my job. You can say what you want to say or how you want to put it. I'm NOT gonna end like this. Yes, I'm going to work on Monday and I expect to get paid like I normally do. Because, when you start saying you see me not doing my work, when I get up every day at 8:00 to 2:00 in the afternoon busting my ass in that hot ass sun. Goin' up and down the steps. No body helps me. No body. And them two [UNREADABLE] office that work there as assistants, they sit there all day and do nothing, you got to pay them. More then what you're paying me. $100 ain't making you any richer and sure making you no poorer. [UNREADABLE] been coming in for a whole year now. And how is it affecting you. You're paying them more than me, so how you cutting me off, when you paying me the less. I think you better think about it.

++

6 B

Message received on Voice Mail of Sal D'Aquilla on Thursday, June 27, 2002 at 9:51 a.m.:

Hello, this is Catalina. This will be the last phone call you'll receive from me. [UNREADABLE] the company [UNREADABLE] its own budget. But why is Maralez and Beval still working for you under the sub and you're till paying the through Carabetta. Well, it doesn't really matter anymore, because I went to the Board of Discrimination, and I opened up the case against you, Sal, Jocko and Joe. So, you can hire all the Puerto Ricans as you want. Yea, I'm Spanish, and I'm not discriminating. But, it's funny how you kept her and yesterday, she had her niece come to work and help clean the apartments. A five-year old little girl was in the apartment cleaning with chemicals. But you allow all that to happen. But if someone busts her ass working for you and [UNREADABLE] to work. I got my own transportation. She don't even have a car. She gets a ride from who she can get a ride from the maintenance crew. That's why the maintenance can't do their job. Because she's always begging for a ride to go clean a unit. Furthermore, she should've had a car before she started working there. Why is she still there, you don't know. You don't even watch her. Mari, yea Mari does her work. But what about the other two that's sitting around there calling Puerto Rico and calling Connecticut on a long distance service, dialing 10-10-2-20 and you even don't that's what's going on. And they call and they [UNREADABLE] talk on the phone holding up one line, calling all over the place any you guys not aware of it. And you're thinking their doing work. [UNREADABLE], but you pay her all the time, for the same apartment. How do you like that one. But I'm gonna be laughing best then any of y'all. Because telling all and I wrote down everything that I did. Everything. I was going to work on a mission and I got my missions accomplished. You pay her, you better get rid of her. Because if you don't, it's going to be the biggest thing I will never forgive. She's still there, you still pay her under a sub, I find the whole shit out. And if anybody has to go, Jose too. [UNREADABLE] has no office experience. She doesn't know anything. Why isn't she filing the old work orders into the cabinets, into the files, instead of sitting there running you phone bill up? [UNREADABLE] bring kids to work with her. Why is she working and cleaning an apartment with a dress on and sandals? How can you clean with a dress and sandals? You can answer the question to that. And if you [UNREADABLE] what I have to say, call me back at 739-8527.

"UNREADABLE" refers to portions of the voicemail messages that were inaudible and therefore not transcribed.

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CATALINA DAVIS,
Complainant

v.

CARABETTA                                    Docket No: 022302968
Respondent

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### AFFIDAVIT OF MARYANN K. BRUNTON

1.   My name is Maryann K. Brunton and I am over eighteen years of age. I understand the meaning of an oath.

2.   I am a compliance officer at the Massachusetts Commission Against Discrimination.  I am the individual who is charged with investigating the case, *Davis v. Carabetta*, MCAD Docket number 022302968.

3.   On January 13, 2003 I conducted an investigative conference regarding the above-referenced case.  Individuals employed by Respondent, Mr. Wayne Mitchell, Maintenance Supervisor, Mr. Leroy Giacco Broccoli, Mr. Sal D'Aquila, and Mr. Dino Broccoli were present at the conference.

4.   During the conference I requested a copy of Respondent's sexual harassment policy in effect.  Counsel, Mr. Barry Guryan, handed me Respondent's policy.  I informed Mr. Guryan that the policy was not in compliance with the 1996 change in the law.

5.   During the conference I questioned Mr. Wayne Mitchell, Supervisor at Respondent, whether Ms. Davis had complained to him regarding whether Mr. Dino Broccoli had made a comment about Ms. Davis' breasts.  Mr. Mitchell admitted that Ms. Davis had complained to him about alleged comments Mr. Broccoli made to her.

6.   I asked Mr. Mitchell what actions he took in response to her complaint. He stated that he approached Mr. Broccoli and asked him if he made

the comment and Mr. Broccoli denied making the comment. Mr. Mitchell admitted that he did not report the incident to his supervisor, and he did not make any subsequent notes or reports about the incident. He claimed that he told Ms. Davis that he spoke to Mr. Broccoli about the incident.

7.    I questioned Mr. Dino Broccoli about the incident and I asked him if he recalled the conversation with Mr. Mitchell. He stated that Mr. Mitchell asked him, "Doesn't she have a nice body? She must work out." When I questioned Mr. Mitchell, he denied making the comment.

8.    I questioned Mr. Mitchell about how Respondent rehired former employees after Respondent had decided to no longer contract cleaning services to a separate company. He stated that he contacted former employees to ask if they wished to be re-employed at Respondent. I asked him why Ms. Davis was not rehired at Respondent. Mr. Mitchell replied that Ms. Davis had a charge pending at the time. When I questioned him, he clarified that it was a charge at the M.C.A.D. and not elsewhere. Mr. Mitchell also admitted that Ms. Davis was a good employee. Mr. Mitchell later claimed that Ms. Davis did not want to be re-employed at Respondent. Ms. Davis denied this allegation.

9.    Mr. Sal D'Aquila stated during the conference that Mr. Mitchell did the rehiring, but it went "across (his) desk."

10.    Patricia Quintilian, Esquire, was also present at the conference and participated in conducting the conference.

I UNDERSTAND THAT I MADE THIS STATEMENT OF MY OWN FREE WILL AND THAT IT IS UNLAWFUL FOR ANY PERSON OR ORGANIZATION TO RETALIATE AGAINST ME FOR MAKING THIS STATEMENT.

I SWEAR OR AFFIRM THAT I HAVE READ THIS STATEMENT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

MARYANN K. BRUNTON

SWORN TO AND SUBSCRIBED BEFORE ME THIS _15_ DAY OF _Jan_ , 2003.

NOTARY PUBLIC                    My Commission Expires: _9/15/06_

# CONNECTICUT COMMISSION ON HUMAN RIGHTS & OPPORTUNITIES

## AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE

**Date:** July 3, 2002

**CHRO No.:** 0330014

**EEOC No.:** _____

**My name is** Ms. Robin Ray

**and I reside at** c/o Ms. Jennifer Lewis, 54 Grove Street, #4, Middletown, CT 06457

**The respondent is/are** Carabetta Property Management, Inc.

**whose business address is/are** 200 Pratt Street, Meriden, CT 06450

**I was**

( ) denied reasonable accommodation on the basis of as disability on or about _____
(X) terminated on or about 10/25/01
( ) suspended on or about _____
(X) laid off on or about 10/25/01
( ) not recalled on or about _____
( ) demoted on or about _____
( ) harassed on or about _____
( ) poorly evaluated on or about _____
( ) warned on or about _____
(X) sexually harassed on or about 6/01 - 8/01
( ) denied a raise on or about _____
( ) earning unequal pay on or about _____
( ) transferred on or about _____
(X) retaliated against on the basis of my participation in a civil rights issue on or about 10/25/01
( ) delegated unequal duties on or about _____
( ) not hired on or about _____
( ) placed on probation on or about _____
( ) not promoted on or about _____
( ) given reduced hours on or about _____
( ) less trained on or about _____
( ) denied equal services on or about _____
( ) other _____ on or about _____

**and believe that my**

( ) race (_____)
( ) age (___ dob: _____)
( ) marital status (_____)
( ) color (_____)
( ) alienage (_____)
(X) sex ( F ) ( ) Pregnancy
( ) national origin (_____)
( ) sexual orientation (_____)
( ) ancestry (_____)
( ) religion/creed (_____)
( ) prior criminal record
( ) physical disability (_____)
( ) having previously opposed
( ) mental disability/disorder (_____)
  discriminatory conduct
( ) learning disability (_____)

**was/were in part a factor(s) in this action. I believe that the respondent violated the following Connecticut General Statutes and Acts listed below:**

( ) 46a-58(a)    (X) 46a-60(a)(1)    ( ) 46a-60(a)(4)    ( ) 46a-60(a)(7)    ( ) 46a-75
( ) 46a-64(a)    ( ) 46a-81( )( )    ( ) 46a-80    (X) 46a-60(a)(8)( )( )    ( ) 46a-70( )
(X) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 20003 and the Civil Rights Act of 1991 {15 or more employees}
( ) Age Discrimination in Employment Act, of 1967, 29 U.S.C. 621-634 {20 or more employees}
( ) Americans with Disabilities Act, 42 U.S.C. 12101 et seq.
( ) Equal Pay Act of 1964, U.S.C. 206    ( ) Other _____

RECEIVED
STATE OF CONNECTICUT
JUL 11 2002
Comm. On Human Rights & Opportunities
WEST CENTRAL REGION

**EQUAL EMPLOYMENT OPPORTUNITY COMMISION**
**CONNECTICUT COMMISION ON HUMAN RIGHTS AND OPPORTUNITIES**

| | | |
|---|---|---|
| **ROBIN RAY** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CARABETTA PROPERTY** | : | **JULY 3, 2002** |
| **MANAGEMENT, INC.** | : | |

*RECEIVED*
*STATE OF CONNECTICUT*
*JUL 1 1 2002*
*Comm. On Human Rights & Opportunities*
*WEST CENTRAL REGION*

## COMPLAINT OF DISCRIMINATION

1.      I file this complaint to contest the discrimination against me by my former employer, Carabetta Property Management, Inc., because of my gender, because I was sexually harassed, and because I complained about the sexual harassment.

2.      I am represented in this action, and proceed by and through my attorneys Leon M. Rosenblatt and Lynn M. Mahoney, 10 North Main Street, West Hartford Connecticut.

3.      I began working for the respondent at the end of May of 2001 as a security guard.  The respondent has more than 15 employees.  I was the only female security guard working for the respondent.

4.      In June 2001, soon after I began working for the respondent, my supervisor, Ronald Downes, began sexually harassing me.  This harassment was severe and pervasive and caused me to work in a sexually hostile environment.  This harassment included the following:  telling me I had "no tits or ass"; repeatedly asking me what I had on underneath my uniform shirt; making frequent and unnecessary trips to the complex where I worked; and continually staring at me in a sexual manner.

5.      I reported this harassment to the company by filing a statement with a representative of the company.  However, this treatment continued.  Then in approximately August 2001, I complained to another one of my superiors.

6.      Then on October 25, 2001, I was laid off and told that the company was reorganizing.  This reason for terminating me was untrue and was merely a pretext for discriminating against me because of my gender and because I complained about sexual harassment.  I was the only person laid off in the so-called reorganization.

7.      As a result of the respondent's discrimination against me, I suffered loss of wages, the benefits of employment, humiliation, embarrassment, and severe mental and emotional distress.

07. 03.02
Date

Robin Ray

Subscribed and sworn to before me this 3rd day of July, 2002 in West Hartford, Connecticut.

Commissioner of Superior Court/Notary

2

**FORM 103**

## IMPORTANT: YOU MUST OBTAIN A NOTARIZATION OF YOUR COMPLAINT BEFORE YOU RETURN

I request the Connecticut Commission on Human Rights and Opportunities investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy to which I may be entitled.

Ms. Robin Ray _____ being duly sworn, on oath, states that she or he is the Complainant herein, that she or he has read the foregoing complaint and knows the content thereof; that the same is true of her or his own knowledge, except as to the matter herein stated on information and belief and that as to these matters she or he believes the same to be true.

Dated at West Hartford _____, **Connecticut this** 3rd **day of** July _____, **20** 02 .

**Complainant's Signature**

Subscribed and sworn to before me this _____ 3rd , day of July _____, **20** 02 _____.

**Notary Public/Commissioner of the Superior Court**

**My commission expires:** _____

RECEIVED
STATE OF CONNECTICUT
JUL 1 1 2002
Comm. On Human Rights & Opportunities
WEST CENTRAL REGION

Form 103                                                        Revised 1/1/96

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO.:  05-30112 MAP


CATALINA DAVIS

v.

CAPABETTA


DEPOSITION OF CATALINA DAVIS, a witness called on
behalf of the Defendant, taken pursuant to Notice under
the applicable provisions of the General Rules of Civil
Procedure of the Superior Court before Ilona Connor, a
Notary Public in and for the Commonwealth of
Massachusetts, at the offices of Ralph Chrabetta, Esq.,
364 Ocean Avenue, Revere, Massachusetts, on Tuesday, June
27, 2006, commencing at 1:05 p.m.


CAPUTO COURT & STENOGRAPHIC AGENCY
117 Walnut Street
Saugus, MA  01906
(781) 231-0020

2

APPEARANCES:

Rubin Pscarella, Esq.

361 Ocean Avenue

Revere, MA  02151

        Counsel for Defendant

ALSO PRESENT:

Salvatore D'Aquila

```
      A    Yes, I told him how much I wanted, and that's how

           much he paid me, because I worked from 8:00 to 12:00,

 3         Monday through Friday.

 4    Q    Do you know how many hours per week you worked?

 5    A    Only 20, because I only worked 8:00 to 12:00, Monday

 6         through Friday, I wasn't there the full day.  The

 7         only time I worked the full day was inspection time.

 8    Q    Do you recall how much your check was for?

 9    A    $200.

10    Q    And no taxes were taken out?

11    A    No.

12    Q    At the end of the year did you receive a form called

13         a 1099 form?

14    A    No.

15    Q    Did you ever declare to the government any of the

16         money you made?

17    A    Um --

18    Q    Did you file taxes?

19    A    No, I never filed for taxes.

20    Q    Did you ever ask for a refund from the government?

21    A    No.

22    Q    Did you ever -- did they ever ask you to file -- do

23         you want that a bit more?

24    A    Yes, I --
```